UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOE W. PEEPLES, III,

                                    Plaintiff,

                                                                3:19-cv-00868
v.                                                              (TJM/TWD)


FBI AGENT CHRIS FIORITO, et al.,

                                    Defendants.
_____

APPEARANCES:

JOE W. PEEPLES, III
  *Plaintiff, pro se*
40425-048
USP POLLOCK
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 2099
Pollock, LA 71467


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

                    __ORDER AND REPORT-RECOMMENDATION__

        The Clerk has sent to the Court for initial review the amended complaint in this action,

brought pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971), by *pro se* Plaintiff Joe W. Peeples, III.  (Dkt. No. 19.)

For the reasons set forth below, the Court recommends that Plaintiff's amended complaint (Dkt.

No. 19) be dismissed in its entirety for failure to state a claim upon which relief may granted and

without further leave to replead.

I.    **BACKGROUND**

The Court granted Plaintiff's application to proceed *in forma pauperis* in its Order and

Report-Recommendation filed in the case on July 20, 2019.  (Dkt. No. 16.)  Generally, in the

original complaint, Plaintiff claimed Defendants Federal Bureau of Investigation Agents Chris

Fiorito and John Bokal, the Department of Justice, and local agencies and officers, violated his

rights during and after an arrest in Binghamton, New York when they transported him away from

that city to face charges in another federal judicial district.  (Dkt. No. 9.)

On initial review conducted pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, the

Court recommended that Plaintiff's complaint be dismissed with prejudice in part and with leave

to replead in part (the "July Report-Recommendation").  (Dkt. No. 16.)  Plaintiff did not file

objections to the Report-Recommendation.

By Decision & Order filed October 19, 2020, the Honorable Thomas J. McAvoy, Senior

United States District Judge, accepted and adopted the July Report-Recommendation in its

entirety for the reasons stated therein.  (Dkt. No. 17.)  Accordingly, it was Ordered that

Plaintiff's complaint be dismissed in part and dismissed with leave to replead in part, as follows:

> 1.  Any claims against Defendants the United States Department of
> Justice, the Binghamton PD Lock-up, and the Binghamton Sheriff
> are hereby DISMISSED WITH PREJUDICE;
>
> 2.  Any claims brought pursuant to 18 U.S.C. § 242 in which
> Defendant seeks criminal prosecution of Defendants or others are
> hereby DISMISSED WITH PREJUDICE;
>
> 3.  Any Eighth Amendment claims are hereby DISMISSED WITH
> PREJUDICE;
>
> 4.  Any Fourth Amendment claims are hereby DISMISSED
> WITHOUT PREJUDICE TO REPLEADING; and

> 5.  All remaining claims are hereby DISMISSED WITHOUT
> PREJUDICE as barred by *Heck v. Humphrey*, 512 U.S. 477
> (1994).

*Id*. at 2-3.  Plaintiff was advised that an amended complaint supersedes in all respects the prior

pleading.  *Id*. at 3.  He was instructed that any amended complaint must be a complete pleading

and include all facts and claims not otherwise dismissed by the Court with prejudice.  *Id*.  He was

advised to properly allege in the amended complaint all factual bases for all claims asserted

therein, and that the amended complaint must be in compliance with Rules 8 and 10 of the

Federal Rules of Civil Procedure.  *Id*.

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    Legal Standard

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court

shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[1]

Similarly, 28 U.S.C. § 1915A, directs that a court must review any "complaint in a civil

action in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune

from such relief."  28 U.S.C. § 1915A.

---

[1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When reviewing a complaint under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, courts are guided by applicable requirements of the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense."  *Hudson v. Artuz*, No. 95 Civ. 4768(JSR), 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)).

Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> (b) Paragraphs; Separate Statements.  A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Laspisa v. Citifinancial Does 1 to 20*, 269 F. Supp. 3d 11, 13 (N.D.N.Y. 2017) (citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**B.    Analysis**

Plaintiff's amended complaint, like his original complaint, alleges Defendants Federal Bureau of Investigation Agents Chris Fiorito and John Bokal, the Department of Justice, and local agencies and officers, violated his rights in Binghamton, New York when, following his arrest, they transported him away from that city to face charges in another federal judicial district.  (Dkt. No. 19.)  Specifically, Plaintiff claims that on January 6, 2017, "unknown" law

enforcement officers "illegally gained custody of [his] body from Binghamton Jail without any legal paper work at all." *Id*. at 2.[2]  Plaintiff claims FBI Agent Fiorito "with the assistance from unknown person at the Binghamton Jail" and against Plaintiff's will "without any controlling legal documents" "force[d]" Plaintiff to "remove all of [his] clothes, bend over and spread [his] cheeks and cough." *Id*. at 4.  Plaintiff claims he was "only accused of a crime" by Agent Bokal with no other probable cause determination and "was forcibly placed into an SUV and kidnapped." *Id*.  He claims he was "sexually exploited and kidnapped" in violation of his constitutional rights under the Fourth and Fourteenth Amendments.  *Id*. at 5.

Plaintiff alleges he is being incarcerated "illegally" and was denied his "due process" in that he was denied a preliminary hearing in the "district of arrest" before an impartial magistrate judge.  *Id*. at 1-2.  "To this day," Plaintiff has "been usurped by these actions against all written rule of law and the U.S. Constitution" and "has no signature of affirmation or attestment on my indictment or criminal affidavit."  *Id.* at 5.  Plaintiff seeks monetary damages.  *Id*. at 5.  For a complete statement, reference is made to the amended complaint.  (Dkt. No. 19.)

### 1.    Claims against the United States Department of Justice, the Binghamton PD Lock-up, and the Binghamton Sheriff

Plaintiff lists the "DOJ, et al." as Defendants in the caption of the amended complaint.  (Dkt. No. 19 at 1.)  As set forth above, the District Court dismissed any claims against the United States Department of Justice, the Binghamton PD Lock-up, and the Binghamton Sheriff with

---

[2]  Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

prejudice.  (Dkt. No. 17.)  Therefore, the Court recommends these Defendants be terminated from the Docket.

### 2.       Fourth Amendment Claims Related to Visual Body Cavity Search

As discussed in the July Report-Recommendation, the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion," *Katz v. United States*, 389 U.S. 347, 350 (1967), and its protections extend to prisoners and pretrial detainees, *see Bell v. Wolfish*, 441 U.S. 520, 545, 559 (1979).  (Dkt. No. 16.)  However, the Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."  *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012); *see also Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992) ("Although inmates do possess a limited right to bodily privacy, some aspects of that right must yield to searches for contraband, even random visual body-cavity searches, so that prison administrators may maintain security and discipline in their institutions.").

Here, Plaintiff claims FBI Agent Fiorito "with the assistance from unknown person at the Binghamton Jail" and against Plaintiff's will "without any controlling legal documents" "force[d]" Plaintiff to "remove all of [his] clothes, bend over and spread [his] cheeks and cough."  (Dkt. No. 19 at 4.)  To be sure, "[a] strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy."  *Harris*, 818 F.3d at 58 (quoting *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 344-45 (2012) (Breyer, J., dissenting)).  But a constitutional violation requires more—for example, "that the search was excessive, was needlessly prolonged[,] . . . was otherwise meant to intimidate, harass or punish him," *Perez v.*

*Ponte*, 236 F. Supp. 3d 590, 624 (E.D.N.Y. 2017), *report and recommendation adopted by* 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017), or was "conducted in the presence of unnecessary spectators." *Harris*, 818 F.3d at 62.

Here, Plaintiff's allegations do not suggest that the visual body search "did not serve a legitimate penological purpose" or that it was "instead designed to intimidate, harass, or embarrass" him.  Rather, Plaintiff claims he was being held and subject to the visual body search "without any controlling legal documents" at the Binghamton jail.  As pleaded, Plaintiff's allegations do not amount to a constitutional violation "because *Florence* permits corrections officers to strip search detainees without particularized suspicion . . . and recognizes that strip searches are specifically 'designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.'" *Chaney v. City of Albany*, No. 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at *7 (N.D.N.Y. Aug. 16, 2019) (quoting *Thompson v. City of New York*, No. 16-CV-824, 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017)).

Therefore, the Court recommends dismissing Plaintiff's Fourth Amendment claims related to the visual body cavity strip search against Defendant FBI Agent Fiorito and the "unknown individual" pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Because Plaintiff has already been afforded an opportunity to amend this claim, the Court recommends dismissal without leave to replead.

### 3.    Remaining Claims barred by *Heck*

Like the original complaint, Plaintiff claims he is "illegally" incarcerated and alleges violations of his constitutional rights when, *inter alia*, he was denied due process and a preliminary hearing in the district of arrest.  (*See generally* Dkt. No. 19.)  However, as set forth in the July Report-Recommendation, a civil lawsuit may not be used to collaterally attack a

8

criminal conviction.  *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held

that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a [Section] 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized to
> make such a determination, or called into question by a federal
> court's issuance of a writ of habeas corpus.

*Id*. at 486-87 (internal footnote omitted).  Although *Heck* involved a Section 1983 claim, the

Second Circuit has held that the rationale of *Heck* applies equally to a *Bivens* action.  *See*

*Tavarez v. Reno*, 54 F.3d at 110; *see also Maietta v. Artuz*, 84 F.3d 100, 103 n.1 (2d Cir. 1996).

Broadly stated, *Heck* precludes a prisoner from using Section 1983 and/or *Bivens* as a

vehicle to obtain damages where success on the particular constitutional claims alleged would

necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.

*Poventud v. City of N.Y.*, 750 F.3d 121, 130 (2d Cir. 2014) (en banc).  Thus, under *Heck* and its

progeny, a Section 1983 and/or *Bivens* action "is barred (absent prior invalidation) no matter the

relief sought (damages or equitable relief) . . . if success in that action would necessarily

demonstrate the invalidity of confinement or its duration."  *Wilkinson v. Dotson*, 544 U.S. 74,

81-82 (2005) (emphasis in original).  "Disposition of the claims on *Heck* grounds, however,

warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's

conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to

make such determination, or called into question by a federal court's issuance of a writ of habeas

corpus.'"  *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (quoting *Heck*, 512 U.S. at 487)

(other citations omitted).

Here, Plaintiff has not pleaded any new facts in the amended complaint suggesting the *Heck* bar has disappeared.  On the contrary, Plaintiff claims "to date" he is still being "illegally" incarcerated because he was denied due process at a preliminary hearing and challenges the validity of his indictment or criminal affidavit.  (Dkt. No. 1 at 1, 5.)  It thus does not appear that Plaintiff's conviction has been invalidated, and — given the nature of his allegations — the success of his claims would necessarily imply the invalidity of his conviction or sentence.

Therefore, the Court recommends dismissing Plaintiff's remaining claims, if any, which would necessarily imply the invalidity of his current conviction or sentence, be dismissed without prejudice as barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentenced invalidated.  *See Amaker*, 179 F.3d at 52.

**ACCORDINGLY**, for the reasons set for above, it is hereby

**RECOMMENDED** that the amended complaint (Dkt. No. 19) be **DISMISSED IN ITS ENTIRETY WITHOUT FURTHER LEAVE TO REPLEAD** for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Clerk be directed to terminate the U.S. Dept. of Justice, Binghamton PD Lock-up, and Binghamton Sheriff from the Docket; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2015); Fed. R. Civ. P. 72, 6(a).


Dated: February 1, 2021
        Syracuse, New York

                                            Thérèse Wiley Dancks
                                            United States Magistrate Judge

---

mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed
period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of
the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1998 WL 832708
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,
v.
Christopher ARTUZ, Warden Philip
Coombe, Commissioner Sergeant
Ambrosino Doctor Manion Defendants.

No. 95 CIV. 4768(JSR).
|
Nov. 30, 1998.

**Attorneys and Law Firms**

Mr. Theodore Hudson, Great Meadow Correctional Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's complaint alleges defendants violated his constitutional rights while he was an inmate at Green Haven Correctional Facility. [1] Plaintiff's complaint was dismissed *sua sponte* by Judge Thomas P. Griesa on June 26, 1995 pursuant to 28 U.S.C. § 1915(d). On September 26, 1995, the Second Circuit Court of Appeals vacated the judgment and remanded the case to the district court for further proceedings.

[1]   Plaintiff is presently incarcerated at Sullivan Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on January 31, 1996. Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c) on November 25, 1996. Thereafter, the case was reassigned to Judge Jed S. Rakoff on February 26, 1997. On February 26, 1998, Judge Rakoff granted defendants' motion to dismiss, but vacated the judgment on April 10, 1998 in response to plaintiff's motion for reconsideration in which plaintiff claimed that he never received defendants' motion to dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case was referred to me for general pretrial purposes and for a Report and Recommendation on any dispositive motion. Presently pending is defendants' renewed motion to dismiss. Plaintiff filed a reply on July 6, 1998. For the reasons discussed below, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this order.

FACTS

Plaintiff alleges that he was assaulted by four inmates in the Green Haven Correctional Facility mess hall on March 14, 1995. (Complaint at 4.) He alleges that he was struck with a pipe and a fork while in the "pop room" between 6:00 p.m. and 6:30 p.m. (Complaint at 4–5.) Plaintiff contends that the attack left him with 11 stitches in his head, chronic headaches, nightmares, and pain in his arm, shoulder, and back. (*Id.*) Plaintiff also states that Sergeant Ambrosino "failed to secure [the] area and separate" him from his attackers. (Reply at 5.) Plaintiff's claim against Warden Artuz is that he "fail [sic] to qualify as warden." (Complaint at 4.) Plaintiff names Commissioner Coombes as a defendant, alleging Coombes "fail [sic] to appoint a qualified warden over security." (Amended Complaint at 5.) Plaintiff further alleges that Dr. Manion refused to give him pain medication. (Complaint at 5.) Plaintiff seeks to "prevent violent crimes" and demands $6,000,000 in damages. (Amended Complaint at 5.)

Defendants moved to dismiss the complaint, arguing that: (1) the Eleventh Amendment bars suit against state defendants for money damages; (2) the plaintiff's allegations fail to state a claim for a constitutional violation; (3) the defendants are qualifiedly immune from damages; and (4) plaintiff must exhaust his administrative remedies before bringing this suit.

DISCUSSION

I find that plaintiff's complaint runs afoul of Rules 8 and 10 of the Federal Rules of Civil Procedure and dismiss the complaint without prejudice and with leave to amend. Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the

1998 WL 832708

adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**\*2** Rule 10 of the Federal Rules of Civil Procedure requires, *inter alia,* that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. *Moore's Federal Practice,* Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. *Id.*[2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." *Sandler v. Capanna,* 92 Civ. 4838, 1992 WL 392597, \*3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

[2]    Rule 10 states:

      (b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. *Id.; see also Salahuddin v. Cuomo,* 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible

that its true substance, if any, is well disguised." *Id.* In those cases in which the court dismisses a *pro se* complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a *pro se* litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. *See Salahuddin,* 861 F.2d at 42–42; *see also Doe v. City of New York,* No. 97 Civ. 420, 1997 WL 124214, at \*2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's *pro se* complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429

U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff

harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 832708

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Perez v. Ponte, Not Reported in Fed. Supp. (2017)

2017 WL 1050109

2017 WL 1050109
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Jesswill PEREZ, Plaintiff,

v.

Joseph PONTE, et al., Defendants.

16-CV-645 (JFB)(AKT)
|
Signed 03/15/2017

**Attorneys and Law Firms**

Jesswill Perez, Fishkill, NY, pro se.

Colin M. Ceriello, Office of the Corporation Counsel New York City Law Department, New York, NY, Pablo A. Fernandez, Nassau County Attorney's Office, Mineola, NY, for Defendants.

ORDER

Joseph F. Bianco, United States District Judge

**\*1** Before the Court is a Report and Recommendation ("R&R," ECF No. 40) from Magistrate Judge Tomlinson recommending that the Court grant defendants Michael Sposato's and Joseph Ponte's ("defendants") motions to dismiss (ECF Nos. 16, 20). The R&R instructed that any objections to the R&R be submitted within fourteen (14) days of service of the R&R. (See R&R, dated February 14, 2017, at 68.) Defendants served the R&R on plaintiff on February 21, 2017 (see ECF No. 43), and the date for filing any objections has accordingly since expired. Plaintiff has not filed any objections to the R&R. For the reasons set forth below, the Court adopts the thorough and well-reasoned R&R in its entirety, grants defendants' motion to dismiss plaintiff's claims, grants plaintiff's motion to amend his complaint, in part, and denies the motion to amend, in part. Specifically, plaintiff may amend his Complaint to: (1) substitute only Chief Turhan Gumusdere and Officers John Doe #1 and John Doe #2 as Defendants; and (2) assert claims of constitutional deprivations of his Fourteenth Amendment Due Process rights based upon his transfer from Riker's to Rockland as well as his failure-to-protect claim. Plaintiff shall file the amended complaint by April 24, 2017. Failure to file

an amended complaint by that date may result in dismissal of the case with prejudice for failure to prosecute.

Where there are no objections, the Court may adopt the report and recommendation without de novo review. See Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision."); cf. 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(3) (requiring de novo review after objections). However, because the failure to file timely objections is not jurisdictional, a district judge may still excuse the failure to object in a timely manner and exercise its discretion to decide the case on the merits to, for example, prevent plain error. See Cephas v. Nash, 328 F.3d 98,107 (2d Cir. 2003) ("[B]ecause the waiver rule is non jurisdictional, we 'may excuse the default in the interests of justice.' " (quoting Thomas, 474 U.S. at 155)).

Although plaintiff has waived any objections to the R&R and thus de novo review is not required, the Court has conducted a de novo review of the R&R in an abundance of caution. Having conducted a review of the full record and the applicable law, and having reviewed the R&R de novo, the Court adopts the findings and recommendations contained in the well-reasoned and thorough R&R in their entirety. Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss plaintiff's claims is granted. IT IS FURTHER ORDERED that plaintiff's motion to amend is granted, in part, and denied, in part, in accordance with Judge Tomlinson's R&R. In particular, plaintiff may amend his Complaint to: (1) substitute only Chief Turhan Gumusdere and Officers John Doe #1 and John Doe #2 as Defendants; and (2) assert claims of constitutional deprivations of his Fourteenth Amendment Due Process rights based upon his transfer from Riker's to Rockland as well as his failure-to-protect claim. Plaintiff shall file the amended complaint by April 24, 2017. Failure to file an amended complaint by that date may result in dismissal of the case with prejudice for failure to prosecute.

**\*2** SO ORDERED.

2017 WL 1050109

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1050109

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

2019 WL 3857995
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nakia CHANEY, Plaintiff,

v.

CITY OF ALBANY, Albany Police Department,
Steven Krokoff, Scott Gavigan (Badge #1826),
Richard Gorleski (Badge #2232), Daniel Kuhn
(Badge #1952), Kevin Meehan (Badge #2407),
John Doe (Badge #889), Brian Kisling, Matthew
Staley, Daniel James, Jason Wilson, Seeber,
Schenectady County, Schenectady County Jail,
Anthony Sinatra (Badge #270), Joseph Glasser
(Badge #065), Kris Van Hoesen (Badge #291), Ernie
Reaulo (Badge #24), Unknown John Does From
Schenectady Sheriff, Unknown John Does From
Schenectady County Jail, and Alan Bell, Defendants.

6:16-CV-1185 (NAM/TWD)
|
Signed 08/16/2019

**Attorneys and Law Firms**

Nakia Chaney, Schenectady, New York 13206, Plaintiff Pro Se.

The Rehfuss Law Firm, P.C., Stephen J. Rehfuss, Esq., Abigail W. Rehfuss, Esq., 40 British American Blvd., Latham, New York 12110, Attorneys for Defendants City of Albany, Krokoff, Gavigan, Gorleski, Kuhn, Meehan, Kisling, Wilson, Seeber, Staley, James.

Burke, Scolamiero, Mortati & Hurd LLP, Judith B. Aumand, Esq., 7 Washington Square, Albany, New York 12212, Attorney for Defendant Alan Bell.

Goldberg Segalla, LLP, James F. Faucher, II, Esq., Jonathan M. Bernstein, Esq., 8 Southwoods Blvd., Suite 300, Albany, New York 12211, Attorneys for Defendants Schenectady County, Reaulo, Sinatra, Vanhoesen, Glasser.

**MEMORANDUM-DECISION AND ORDER**

Hon. Norman A. Mordue, Senior District Court Judge:

**I. INTRODUCTION**

**\*1** Plaintiff *pro se* Nakia Chaney ("Plaintiff") brings this action under 42 U.S.C. § 1983 alleging various claims arising out of encounters with the Defendant law enforcement officers. (Dkt. No. 1). Currently before the Court are Defendants' motions for summary judgment, (Dkt. Nos. 165, 167, 168), which Plaintiff has opposed, (Dkt. No. 176, 177, 178). For the reasons that follow, Defendants' motions are granted in part and denied in part.

**II. BACKGROUND**

**A. Procedural History**

Plaintiff commenced this action on September 30, 2016, asserting at least nine claims for alleged violations of his constitutional rights by known and unknown individuals. (Dkt. No. 1). Specifically, Plaintiff first alleges that Defendants Schenectady County, Schenectady County Sheriff's Department, Schenectady County Jail, and Officers Sinatra, Glasser, Van Hoesen, Reaulo, and other unknown John Does (collectively, the "Schenectady County Defendants") conducted "unlawful [ ] visual body cavity searches" on Plaintiff's person prior to his admission to Schenectady County Jail in 2013 and 2014. (*Id.*, p. 22). [1] Plaintiff also alleges that on December 28, 2013, Defendant Glasser used "excessive force [by] unlawfully tasering plaintiff while [in] handcuffs...." (*Id.*, p. 23). Defendant further claims that the Schenectady County Defendants unlawfully denied him medical care immediately following the December 28th incident. (*Id.*, p. 7).

[1]   All citations to documents in the record reference the page numbers identified on the CM/ECF page stamp.

Plaintiff claims that the Albany Police Department ("APD"), Police Chief Steven Krokoff, and Officers Gavigan, Gorleski, Kuhn, Meehan, Kisling, Staley, James, Wilson and Seeber (collectively the "Albany Defendants") conducted "unlawful [ ] visual body cavity searches" on Plaintiff's person at the Albany police station. (Dkt. No. 1, p. 22). Plaintiff further alleges that the Albany Defendants violated his constitutional rights in August 2014 and October 2014 for separate incidents involving alleged "unlawful gun point stop[s], arrest or frisk, forcible touching [ ], sexual assault, excessive force, and abuse of legal process." (*Id.*). Plaintiff claims that the Albany Defendants violated his right to privacy through

Case 3:19-cv-00868-TJM-TWD Document 22 Filed 02/01/21 Page 18 of 32

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

their unlawful touching of his "private parts" during several alleged strip searches. (*Id.*, p. 23).

Finally, Plaintiff alleges that Defendant Alan Bell of the Niskayuna Police Department, along with Defendant Gavigan, conducted "unlawful [GPS] tracking of [Plaintiff's] every move for over 9 months without a warrant...." (Dkt. No. 1, pp. 10, 23). Specifically, Plaintiff claims that Defendant Bell "requested [that] [D]efendant Scott Gavigan use the unlawful GPS tracking device," and "controlled the GPS device in the Town of Niskayuna [while] Defendant Scott Gavigan covered the GPS device for the Albany Police without a warrant [ ] or probable cause." (*Id.*, p. 10).

In November 2017, the Court granted the Albany County Defendants' motion for judgment on the pleadings, dismissing them from this action. (Dkt. No. 110, pp. 7–8). In that same order, the Court denied Defendant Alan Bell's motion to dismiss. (*Id.*, pp. 11–14). On December 15, 2017, the Court granted Plaintiff's motion to substitute Joseph Glasser for Defendant Schenectady County Sheriff Badge #SCP 065; and granted Plaintiff's motion to substitute APD Officers Daniel Kuhn, Brian J. Kisling, Jason A. Wilson, Seeber, Matthew Staley, and Daniel James for "Defendant John Does Albany Police." (*See* Dkt. No. 111).

### B. Record Before the Court [2]

[2]   The discovery deadline expired on November 30, 2018. Defendants deposed Plaintiff on July 31, 2018. (*See* Dkt. No. 165-28). Plaintiff did not depose any of the Defendants.

**\*2**  While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001). The Court has construed the following undisputed facts in the light most favorable to the Plaintiff.

### 1. December 28, 2013 Arrest

On December 28, 2013, Plaintiff was a passenger in a vehicle driven by Lorenzo McGill. (Dkt. No. 165-28, p. 114). McGill led police on a high-speed chase after he was observed driving without headlights. (*Id. see also* Dkt. No. 165-29, ¶ 4). The chase ended at 767 Westmoreland Drive in the Town of Niskayuna, where Plaintiff lived at the time. (Dkt. No. 165-28, pp. 117, 123). There, Plaintiff was involved in a brief struggle with Schenectady County Sheriff's Deputy Glasser, who used a taser to subdue Plaintiff. (Dkt. No. 165-29, ¶ 4). Plaintiff appeared in court and was released on bail that same night. (Dkt. No. 165-28, p. 125). Plaintiff did not receive medical treatment for any injuries while in police custody, nor did he seek medical treatment following his release. (*Id.*, pp. 127–28). Plaintiff was later charged with obstructing governmental administration and resisting arrest; he pled guilty to disorderly conduct in full satisfaction of those charges. (Dkt. No. 165-28, p. 116; Dkt. No. 165-29, ¶ 9; *see also* Dkt. No. 165-36, pp. 3–4; Dkt. No. 165-37, p. 2).

### 2. August 14, 2014 Arrest

On August 14, 2014, Plaintiff was a passenger in a vehicle driven by his friend, Jonathan Smith. (Dkt. No. 165-28, p. 25). APD officers stopped the vehicle after Smith failed to use a turn signal. (Dkt. No. 167-2, p. 4). The police report states that APD officers then observed Smith throw three glassine envelopes, each containing a quantity of heroin, out of the vehicle. (*Id.*). Smith was arrested and charged with criminal possession of a controlled substance and criminal possession of a hypodermic instrument. (*Id.*). Plaintiff was not charged with any crime, and he was released from the scene. (Dkt. No. 165-28, p. 45).

### 3. October 13, 2014 Arrest

On October 13, 2014, APD Officer Gavigan received information from a confidential informant that Plaintiff and the informant would be transporting heroin to the Albany area from New Jersey. (Dkt. No. 167-2, p. 93). When Plaintiff and the informant exited the highway in Albany, APD officers stopped the vehicle and ordered Plaintiff to show his hands and exit the vehicle. (*Id.*, pp. 93–94). The Arrest Report indicates that APD recovered 198 glassine envelopes from the left pocket of Plaintiff's coat located in the trunk of the vehicle. (*Id.*, p. 6). Each envelope contained a quantity of heroin, with an aggregate weight of 4 grams. (*Id.*). Plaintiff was later charged with and convicted of Criminal Possession of a Controlled Substance in the Third Degree in violation of Penal Law § 220.16(1). (Dkt. No. 167-2, p. 7).

**Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)**

2019 WL 3857995

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 19 of 32

#### 4. Visual Body Cavity Searches

In 2014, Plaintiff was convicted of drug crimes in Niskayuna Town Court based on activities unrelated to this action. (Dkt. No. 165-28, p. 46). Plaintiff was sentenced to serve 30 consecutive four-day weekends in Schenectady County Jail. (*Id.*). While serving that sentence, Plaintiff was required to submit to a "visual body cavity search" before each admission to the Schenectady County Jail. (Dkt. No. 165-28, pp. 15–16). Plaintiff was admitted to the Schenectady County Jail and searched according to the County's admission policy on at least six occasions in August and September 2014. (Dkt. No. 165-38, ¶ 4).

#### III. STANDARD OF REVIEW

**\*3** Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *see also Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Further, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citing *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas*

*Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). To that end, "sworn statements are more than mere conclusory allegations subject to disregard [ ]; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." *Id.* at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Further, where a plaintiff proceeds *pro se*, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a *pro se* party's " 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

#### IV. DISCUSSION

Plaintiff asserts a number of claims against each of the Defendants. The Court has construed Plaintiff's Complaint liberally, and will address each of the Defendants' arguments for summary judgment in turn.

#### A. Claims Against the Schenectady County Defendants

##### 1. Excessive Force on December 28, 2013 [3]

[3]
To the extent they are alleged, the Court dismisses Plaintiff's claims against "Unknown John Does from Schenectady County Sherriff" arising from the encounter between Plaintiff and Officer Glasser on December 28, 2013. The Court has reviewed the record and finds that there is no evidence to support a claim that excessive force or other unlawful conduct was committed by any unidentified officer(s) on that date.

**\*4** Plaintiff alleges that on December 28, 2013, Officer Glasser of the Schenectady County Sherriff's Department used "excessive force [by] unlawfully tasering plaintiff while [in] handcuffs." (Dkt. No. 1, p. 23). The Schenectady

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 20 of 32

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Defendants counter that the force deployed by Officer Glasser was proper under the circumstances, and they argue that "Plaintiff is estopped from claiming that he was a passive recipient of police violence." (Dkt. No. 165-43, pp. 6–11).

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017); *see also Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

In evaluating an excessive force claim, courts consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "[A] court must evaluate the record from the perspective of a reasonable officer on scene, rather than with the 20/20 vision of hindsight." *Hulett*, 253 F. Supp. 3d at 491 (citing *Tracy*, 623 F.3d at 96; *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d at 123.

Here, the parties have offered vastly different versions of the events that occurred after the police chase on December 28th. Plaintiff claims that he "did not run [from police] and had no reason to run," and adds that he was "snatched out of the vehicle by several officers at gun point [sic] flanked by several officers and immediately handcuffed and tasered." (Dkt. No. 176, p. 2). These allegations are consistent with the Complaint, and align with his recollection of events during his deposition testimony. (Dkt. No. 1, p. 7; *see also* Dkt. No. 165-28, pp. 117–28). According to Plaintiff, he was

hit by the taser in the leg near his hamstring, causing bleeding and leaving a scar. (Dkt. No. 165-28, pp. 120–21).

Officer Glasser recalls the encounter quite differently, asserting that when the chase ended at 767 Westmoreland Drive:

> Plaintiff Nakia Chaney jumped out of the passenger side door and ran to the front door of the house trying to get the door open. I took plaintiff to the ground where he resisted and refused to place his hands behind his back. I gave Plaintiff direct orders to put his hands behind his back, which he ignored. I used my taser to drive stun plaintiff in the back. This caused plaintiff's hands to move from the front of his body to the back. Once that occurred, I was able to handcuff plaintiff.

> **\*5** At the time of arrest, I did not know why plaintiff had tried to run away. I also did not know if plaintiff was armed and why plaintiff was resisting so hard to keep his hands in front of him. For my safety and the safety of the other officers involved, Plaintiff needed to be handcuffed so that he could not access a weapon or flee the scene....

> Since the taser did not cause any injury to plaintiff, he was not given medical treatment. No taser darts were used. I employed the taser using a drive stun. A drive stun is when the taser is held against someone's body without firing the projectiles, and is used to employ electricity to gain compliance.

(Dkt. No. 165-29, ¶¶ 4–5, 8). Officer Glasser's recollection appears to be consistent with his Arrest Report and Taser Use Report from the night of the incident. (*See* Dkt. No. 165-33, p. 2; Dkt. No. 165-30, p. 2).

Aside from these accounts, the parties offer no additional evidence to support their opposing versions of events. At a minimum, there are material issues of fact as to whether Plaintiff ran and resisted arrest, where the taser struck him, and whether it did so before or after he was in handcuffs, all of which affect the reasonableness of the use of force. Weighing the competing evidence and the parties' credibility is a task reserved for the trier of fact. Accordingly, the disputed issues of material fact preclude resolution as a matter of law, and the Schenectady County Defendants' motion for summary judgment on this claim must be denied.[4]

4    The Court rejects the Schenectady County Defendants' argument that judicial and collateral

estoppel bar Plaintiff's excessive force claim because Plaintiff pled guilty to disorderly conduct. (*See* Dkt. No. 165-43, pp. 16–19). Here, a favorable adjudication of Plaintiff's excessive force claim would not "necessarily imply the invalidity" of Plaintiff's guilty plea because disorderly conduct involves materially different elements than obstructing governmental administration and resisting arrest—the original charges against him. *See Shapard v. Attea*, 710 F. App'x 15, 17–19 (2d Cir. 2017) (reversing the district court's finding that Section 1983 claims were barred where the excessive force claims were not incompatible with the plaintiff's prior guilty plea to second degree assault against an officer).

### 2. Denial of Medical Attention

Plaintiff also appears to claim that he was unlawfully denied medical attention by the Schenectady County Defendants following his arrest on December 28, 2013. (Dkt. No. 1, p. 7). Plaintiff alleges that he required medical treatment because "he became extremely hot, nervous, heart racing [sic], shocked scared weird feeling but was denied initial medical treatment to document complaints." (Dkt. No. 176, p. 2).

A claim for deliberate indifference to a pre-trial detainee's serious medical needs is analyzed under the Fourteenth Amendment, and requires a two-part showing: (1) that Plaintiff had a serious medical need for treatment; and (2) that the Schenectady County Defendants acted with deliberate indifference to such needs. *See Gabriel v. County of Herkimer*, 889 F. Supp. 2d 374, 392 (N.D.N.Y. 2012) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 71–72 (2d Cir. 2009)). The first element requires "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (citing *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)). The second element is met when "the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.' " *Id.* (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).

*6 Here, Plaintiff offers no evidence of a serious medical condition capable of producing extreme pain, degeneration, or death. (*See generally* Dkt. No. 1; Dkt. No. 176). Plaintiff's claim that he was "extremely hot," "nervous," and "shocked" falls far short of the necessary showing. *See Bradley v. Village of Greenwich Lake*, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (dismissing excessive force claim against an arresting officer who kicked the plaintiff in the stomach causing temporary nausea and an abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005) (dismissing an excessive force claim where the arresting officer caused the plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly, resulting in bruising, swelling and unsubstantiated claims of nerve damage); *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) (dismissing an excessive force claim where the arresting officer pushed the plaintiff into a patrol car causing alleged pain and suffering).

Further, Plaintiff admits that he did not seek medical attention for his alleged medical needs following his release, and he does not claim any lasting physical injuries from the December 28th encounter. (*See* Dkt. No. 165-28, p. 128). Indeed, courts have found that a plaintiff's failure to seek medical attention after being released from custody undermines any claim of serious pain or that urgent care was needed. *See, e.g., Carey v. Maloney*, 480 F. Supp. 2d 548, 557–58 (D. Conn. 2007) (dismissing a plaintiff's claim for denial of medical treatment where the plaintiff never requested medical attention from the police, and did not seek medical attention until nearly twenty-four hours after his release from custody); *see also Rivera v. Goord*, 253 F. Supp. 2d 735, 756 (S.D.N.Y. 2003) ("Evidence that a plaintiff has refused medical care has been found to effectively rebut claims of deliberate indifference to serious medical needs."). After careful review of the record, the Court concludes that there are no facts from which a jury could find that Plaintiff had a serious medical need on December 28, 2013.

Moreover, even if Plaintiff could show a serious medical need, he has not presented any evidence that the Defendant officers ignored or rejected a specific request by Plaintiff for medical attention. Indeed, there is no evidence that the Schenectady County Defendants were even aware of Plaintiff's alleged serious medical condition. Thus, the record offers no facts whatsoever to show deliberate indifference by the Defendant officers.

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Accordingly, because no reasonable jury could return a verdict in Plaintiff's favor for denial of medical attention, the Schenectady County Defendants' motion for summary judgment is granted on this claim.

### 3. Unlawful Visual Body Cavity Searches

Next, Plaintiff alleges that he was subjected to unlawful visual body cavity searches performed by the Schenectady County Defendants prior to each admission for his weekend stays at the Schenectady County Jail. (Dkt. No. 1, p. 22). Plaintiff adds that the "schenectady county jail admission policy in which [Plaintiff] was forced to undress and spread apart his rectal and lift up his penis was without justification as there was no reason to believe that weapons or contraband was being concealed on or in the body and therefore violated [Plaintiff's] constitutional rights." (*Id.*, pp. 19–20). Plaintiff claims that Defendants Van Hoesen, Reaulo, and Sinatra performed an "unlawful admission visual body cavity search" on Plaintiff on several occasions in August, September, and October of 2014. (*Id.*). Plaintiff also alleges that unidentified John Does of the Schenectady County Sheriff's Department performed unlawful visual body cavity searches in December 2013, and May and August of 2014. (*Id.*). Defendants acknowledge that Plaintiff was admitted to the Schenectady County Jail on six separate occasions in August and September 2014. (Dkt. No. 165-38, ¶ 4).

 **\*7** It is well-established that "[t]he general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional, even if the detainee is accused only of a misdemeanor." *Thompson v. City of New York*, No. 16-CV-824, 2017 WL 1929552, at \*2, 2017 U.S. Dist. LEXIS 70423 (S.D.N.Y. May 9, 2017) (citing cases). The Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012). In *Florence*, the Supreme Court held that a county jail did not violate prisoners' rights when it permitted visual inspection body cavity searches, without reasonable suspicion, prior to the prisoners' introduction to a general population unit. *Id.* at 339, 132 S.Ct. 1510. As in *Florence*, Plaintiff's allegations of unlawful searches relate specifically to "visual body cavity searches" conducted upon his admission to the Schenectady County Jail. (*See, e.g.*, Dkt. No. 1, p. 7).

In support of summary judgment, the Schenectady County Defendants argue that Plaintiff's claims have been expressly rejected by the Supreme Court, and that his allegations "fail[ ] to show that the alleged admission visual strip searches violated a clearly established law in the Second Circuit." (Dkt. No. 180-4, pp. 11–12). According to Captain Gregory Cufari of the Schenectady County Sheriff's Office, "[e]ach time the plaintiff entered the jail he was a security risk because he was coming off the street and going into the jail's general population. By coming into the jail from the street, plaintiff had the ability [ ] to bring into the jail such items as weapons, drugs or other contraband." (*Id.*). In response, Plaintiff argues that "there was no reason to conduct a cavity search after plaintiff cleared all boss chairs and handwands without detection," and he contends that "[a]ny cavity searches was only to humiliate as there was no reasonable suspicion as plaintiff cleared security and unrelated to legitimate penological interests." (Dkt. No. 176, p. 4).

On this claim, the Court's previous ruling dismissing Plaintiff's claim against the Albany County Defendants applies with equal force. (*See* Dkt. No. 110, pp. 7–8). Plaintiff alleges that the searches he underwent at the Schenectady County Jail were unconstitutional because the Schenectady County Defendants did not have reasonable suspicion of concealed contraband—precisely the same claim rejected by the Supreme Court in *Florence*. Again here, Plaintiff's argument fails "because *Florence* permits correction officers to strip search detainees without particularized suspicion ... and recognizes that strip searches are specifically 'designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.' " *Thompson*, 2017 WL 1929552, at \*2, 2017 U.S. Dist. LEXIS 70423 (quoting *Florence*, 566 U.S. at 334, 132 S.Ct. 1510). That includes searches involving visual inspection of body cavities. *Florence*, 566 U.S. at 340–41, 132 S.Ct. 1510. Moreover, there is no evidence that the searches "did not serve a legitimate penological purpose," or that they were "instead designed to intimidate, harass, or embarrass [Plaintiff]." *See Smith v. City of New York*, No. 14-CV-5934, 2015 WL 3929621, at \*2, 2015 U.S. Dist. LEXIS 81337 (S.D.N.Y. June 17, 2015).

Accordingly, Plaintiff's claims of unlawful searches fail as a matter of law, and the Schenectady County Defendants' motion for summary judgment on these claims is granted. Plaintiff's claims against the Schenectady County Jail and

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 23 of 32

Officers Van Hoesen, Reaulo, Sinatra, and other "Unknown John Does from Schenectady County Jail" are dismissed with prejudice.

### 4. *Monell* Claim

Next, Plaintiff alleges that "[t]he wrongful conduct alleged herein in regards to the admission visual body cavity searches has been conducted generally upon all members of the plaintiff class in that the strip searches were conducted pursuant to a long-established plan, policy, or procedure of the [Schenectady County Sheriff.]" (Dkt. No. 1, p. 20). This could be construed as a municipal liability claim against Schenectady County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In general, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. In order to sustain a claim for municipal liability under Section 1983, a plaintiff must show that he suffered a constitutional violation in the first place, and that the violation resulted from an identified municipal policy or custom. *Monell*, 436 U.S. at 694–95, 98 S.Ct. 2018. The same is true for claims against other government entities such as the County of Schenectady. *See Sheriff's Silver Star Ass'n of Oswego County, Inc. v. County of Oswego*, 56 F. Supp. 2d 263, 266 (N.D.N.Y. 1999).

**\*8** As noted by the Schenectady County Defendants, Plaintiff's *Monell* claim is limited to the alleged policy and practice of conducting visual body cavity searches upon admission to the Schenectady County Jail. Because the Court has already determined that the County's pre-admission search practices for the jail did not violate the Constitution, Plaintiff's *Monell* claim fails for the same reason. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (municipal liability under *Monell* may only lie where there is an underlying constitutional violation). Accordingly, the Schenectady County Defendants' motion for summary judgment on Plaintiff's *Monell* claim is granted.

### B. Claim Against Defendant Bell

Plaintiff alleges that Defendant Alan Bell, a sergeant with the Niskayuna Police Department, "requested [that] Defendant Scott Gavigan use the unlawful GPS tracking device," and

"controlled the GPS device in the Town of Niskayuna ... without a warrant [ ] or probable cause." (Dkt. No. 1, pp. 10, 23). Plaintiff claims that "[t]he unlawful GPS tracking on plaintiff [sic] vehicle or cellphone was done without a warrant," resulting in a "massive invasion of [his] privacy." (*Id.*, p. 20). Plaintiff admits that these allegations are solely based on logs from the Albany-area license plate reader ("LPR") system, which identify dates, times, and locations when Plaintiff's vehicle was observed on public roads. (Dkt. No. 165-28, p. 141). Plaintiff testified that he is aware that Albany has cameras stationed throughout the city, and that these cameras are used to "record everything that goes by them," including license plates on passing vehicles. (*Id.*, pp. 133–34). Plaintiff also acknowledged that he does not believe that any LPR technology was placed directly on his vehicle. (*Id.*, pp. 135–37). Nonetheless, he argues that the use of numerous cameras throughout the city operated like a tracking device for law enforcement "because it continuously tracks and it works the same way as the GPS works." (*Id.*).

Defendant Bell argues that summary judgment is appropriate "because there is no evidence that Defendant Bell placed or directed to be placed a GPS device on Plaintiff's vehicle(s) and/or cellphone." (*See* Dkt. No. 168-32, pp. 6–9). Defendant Bell contends that Plaintiff's allegations about unlawful GPS tracking stem from a misunderstanding of the LPR technology. (*See id.*). According to Defendant Bell, "it is without question that [LPRs] are lawful, constitutional technology and may be used by law enforcement as a valuable tool." (*Id.*, p. 7).

Indeed, courts have consistently upheld the use of LPR and similar technologies by law enforcement agencies. *See, e.g., United States v. Miranda–Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016) ("Because the police conducted a check of a database containing only non-private information and did so using only registration information that could be seen by any member of the public, the police did not conduct a Fourth Amendment search."); *United States v. Diaz–Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) (stating that "when police officers see a license plate in plain view, and then use that plate to access additional non-private information about the car and its owner, they do not conduct a Fourth Amendment search"); *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) ("Thus, so long as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment"). In *People v. Bushey*, the New York Court of Appeals addressed a similar challenge to

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

police-use of license plate information collected through LPR technology. *See generally* 29 N.Y.3d 158, 75 N.E.3d 1165 (2017). There, the Court of Appeals explained that:

> **\*9** Because the purpose of a license plate is to readily facilitate the identification of the registered owner of the vehicle for the administration of public safety, a person has no reasonable expectation of privacy in the information acquired by the State for this purpose and contained in a law enforcement or DMV database. Indeed, the information is typically provided voluntarily by a driver to a government agency in exchange for the privilege of a valid license and registration. Considering that police officers are authorized by law to inspect and check for violations of licensing and registration requirements (*see* Vehicle and Traffic Law §§ 390, 401), drivers cannot claim any objectively reasonable expectation of privacy with respect to the DMV information being obtained by law enforcement. An officer's observation of that which is publicly displayed and the use of the information relative thereto contained in the DMV database does not violate defendant's Fourth Amendment rights, nor any provision of our New York State Constitution. As defendant did not have any reasonable expectation of privacy in either his license plate or the information lawfully obtained and accessible through the DMV database, there was no search or seizure cognizable under federal or state constitutional law.

*Id.* at 163–64.

Here, Defendant Bell has explained how the Albany Crime Analysis Center ("ACAC"), a division of the Albany Police Department, tracks license plate information throughout the Albany area. (*See* Dkt. No. 168-31, ¶ 5). Relevantly, Defendant Bell states that:

> Plaintiff has relied on print outs from the [ACAC] to claim that I placed or caused to be placed a GPS device on his vehicle(s) and/or cell phone. I did not. Instead, I requested information from the ACAC pertaining to license plates known to be associated with the plaintiff. It just so happens that the license plate information I entered into the system was captured by some of the license plate readers in Albany and the print out demonstrates when and where the license plates passed any of the various cameras.

(*Id.*, ¶ 6). Defendant Bell further explains the LPR log forms cited by Plaintiff as follows:

> One heading of the print out states "GPS". In this context, it is not a GPS in the way plaintiff alleges where a device is placed onto a vehicle or cell phone and then sends out information as to the vehicle's whereabouts at any point in time. Instead, in the context of the license plate readers, "GPS" refers to the location of the license plate reader itself. Based on this, I am able to tell whether the license plate associated with the plaintiff was captured as it drove by a stationary camera or a camera affixed to a police vehicle. If a vehicle associated with Mr. Chaney did not drive by a license plate reader, I would not know his whereabouts. Had there actually been a GPS placed on the vehicle, I would be able to know his whereabouts at all times. Because I only accessed the database and did not use a GPS, I would not know where Mr. Chaney

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 25 of 32

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

was at any given time, only the occasions when he passed a camera.

(*Id.*, ¶ 7).

In sum, the record shows that APD used fixed cameras throughout the city that indiscriminately recorded 24-hours a day, without any particular focus on specific individuals, a fact acknowledged by Plaintiff. (*See* Dkt. No. 165-28, pp. 135–36). And Plaintiff has presented no evidence that Defendant Bell used any technology other than LPR to track the location of Plaintiff's vehicles or his cell phone. Thus, for the reasons outlined by the Court of Appeals in *Bushey*, Defendant Bell's use of the LPR technology did not violate Plaintiff's Fourth Amendment rights because he had no reasonable expectation of privacy in his license plate information while traveling on public roads.

Accordingly, Defendant Bell's motion for summary judgment is granted.

### C. Claims Against the City of Albany Defendants [5]

[5]    The Court notes that the Albany Defendants have not moved for summary judgment on Plaintiff's unlawful tracking claims against APD and Officer Gavigan. (*Compare* Dkt. No. 1, *with* Dkt. No. 167).

### 1. Excessive Force Claim

Plaintiff claims that he was subjected to excessive force during encounters with APD officers on August 14, 2014 and October 13, 2014. (Dkt. No. 1, pp. 7–8, 22–23). Specifically, Plaintiff claims that an unknown officer (Defendant John Doe Badge #889) "used excessive force by tackling [ ] plaintiff to the ground and handcuffing plaintiff as he tried to enter the store on central ave on the night of August 14, 2014." (*Id.*, p. 7). Plaintiff also claims that he was subjected to excessive force on October 13, 2014 when APD Officers Gavigan, Gorleski, Kuhn, and Meehan "roadblocked plaintiffs [sic] vehicle at gun point and strong armed plaintiff facedown in the middle of interstate I-90." (*Id.*, p. 8). During his deposition, Plaintiff stated that he was "snatched out of the vehicle at gunpoint, ... rustled, handcuff[ed], and arrested." (Dkt. No. 165-28, pp. 55–56). Plaintiff claims that the APD Officers had no reason to use force against him.

**\*10**  The Albany Defendants argue that Plaintiff's excessive force claim is subject to summary judgment because "[Plaintiff] fails to articulate any specific physical injuries," and "never sought or received medical treatment as a result of either incident." (Dkt. No. 167-1, pp. 10–11). In response, Plaintiff argues that officers used "extreme and excessive force" on both occasions, but he fails to identify any resulting injuries. (Dkt. No. 177, p. 3).

As discussed above, excessive force claims brought under Section 1983 are evaluated under the Fourth Amendment's "objective reasonableness" standard. *See Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012). "[A] plaintiff must present sufficient evidence to establish that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). "[T]he Second Circuit and district courts in the Circuit recognize the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Furthermore, a " '[*d*]*e minimis* injury can serve as conclusive evidence that *de minimis* force was used.' " *Washpon*, 561 F. Supp. 2d at 407 (quoting *Carr v. Deeds*, 453 F.3d 593, 606 (4th Cir. 2006)). However, the "absence of any significant injury to [Plaintiff] does not end the [excessive force] inquiry, for our standards of decency are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic." *Wright v. Goord*, 554 F.3d 255, 270 (2d Cir. 2009).

Here, Plaintiff does not allege *any* specific injuries resulting from the claimed excessive force by APD officers on August 14 or October 13 in 2014. (*See generally* Dkt. No. 1; Dkt. No. 171). Plaintiff merely asserts that, on August 14th, he was "surrounded by all the officers who basically just took me down," and that "[t]hey came over with guns drawn, threw me down to the floor, rushing me down, and handcuffing me." (Dkt. No. 165-28, pp. 29–30). After being pushed to the ground, Plaintiff states that the APD officers "searched around me, took my phone and stuff out of my pocket, searched my pocket and my, you know, genital area around me at first. And then after that they went and told me to sat [sic] down on the curb, like helped me sit down because I was handcuffed." (*Id.*, p. 32). As for October 13th, Plaintiff recalls that he "got tooken [sic] out of the car, snatched to the ground,

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 26 of 32

handcuffed, and -- rustled me out of the car and took me down to the precinct." (*See id.*, pp. 55–56).

For both arrests, it is undisputed that APD officers had probable cause to believe that drug crimes had been committed and did not know whether Plaintiff and his associates were armed. (*See* Dkt. No. 167-2, pp. 4–9, 93–94). Crediting Plaintiff's allegations, the officers made these arrests by taking Plaintiff down to the ground and placing him in handcuffs. There is no evidence whatsoever that Plaintiff suffered any injury resulting from their actions, much less a significant one. Nor could malicious or sadistic intent be inferred based on their actions. On these facts, no jury could find that the force used against Plaintiff was unreasonable. Therefore, Plaintiff's excessive force against the APD Defendants must be dismissed. *See Bermudez v. Waugh*, No. 11-CV-947, 2013 WL 654401, at *5, 2013 U.S. Dist. LEXIS 23422 (N.D.N.Y. Feb. 21, 2013) (finding that tackling of inmate that caused minor bruising constituted *de minimis* force) (collecting cases); *Bradley v. Village of Greenwood Lake*, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (dismissing excessive force claim against arresting officer who kicked the plaintiff in the stomach causing temporary nausea and an abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005) (dismissing excessive force claim where arresting officer caused the plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly, resulting in bruising, swelling and unsubstantiated claims of nerve damage).

### 2. October 13, 2014 Arrest Report

**\*11** Plaintiff next claims that Defendant Gavigan "falsified the arrest report/accusatory instrument on October 13, 2014 by alleging the red jacket found in the trunk belonged to this plaintiff as opposed to the driver who owned the vehicle." (Dkt. No. 1, p. 9). As a result, Plaintiff claims that his due process rights were violated because the "perjured arrest report/accusatory instrument" did not meet the "requirements of CPL 100.40 and CPL 100.15" since Gavigan "failed to provide any facts to support his conclusory statements[.]" (*Id.*).

In response, the Albany Defendants argue that Plaintiff's drug conviction related to the October 13th incident precludes him from asserting that Detective Gavigan falsified the related

arrest report. (Dkt. No. 167-1, pp. 7–8). This argument relies on the Supreme Court's decision in *Heck v. Humphrey*, which held that:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Here, Plaintiff offers no evidence that his conviction for Criminal Possession of a Controlled Substance in the Third Degree (*see* Dkt. No. 167-2, p. 7) has been reversed or invalidated. Furthermore, the undisputed facts demonstrate that Plaintiff's conviction stems entirely from the evidence obtained by APD officers on October 13th, which included 198 glassine envelopes of heroin recovered from Plaintiff's left coat pocket. (*See id.*, p. 6). Thus, the success of Plaintiff's claim challenging the arrest report would necessarily imply the invalidity of his conviction.

For these reasons, the Court finds that Plaintiff's claim challenging the validity of the October 13th arrest report is

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 27 of 32

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

barred by *Heck* and must be dismissed. *See Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017), *cert. denied*, ––– U.S. ––––, 138 S. Ct. 123, 199 L.Ed.2d 75 (2017) (finding that the appellant's claims alleging that defendants "conspired to fabricate evidence and testimony against him and introduced such fabricated evidence and perjury at trial," if proved, "would demonstrate the invalidity of his conviction," and were therefore barred by *Heck*); *Monroe v. Gould*, 372 F. Supp. 3d 197, 202–03 (S.D.N.Y. 2019) (granting summary judgment on a plaintiff's Section 1983 claim challenging the validity of the police search of a vehicle where the plaintiff's success would have implied the invalidity of the plaintiff's prior conviction).

### 3. Unlawful Strip and Visual Body Cavity Searches

Plaintiff also claims that APD officers subjected him to a number of unlawful strip and visual body cavity searches. (Dkt. No. 1, pp. 23–24). Specifically, Plaintiff alleges that while he was handcuffed on August 14, 2014, "[Defendant John Doe Badge #889], Detective Scott Gavigan and members of his unit arrived on scene and performed there [sic] own search of plaintiff private area [sic]." (*Id.*, p. 8). According to Plaintiff, several APD officers, including Defendant Gavigan, took him to a parking lot and searched his pockets, waistband, shoes, socks, and then removed his belt. (Dkt. No. 165-28, pp. 33–35). Plaintiff states that "my genitals and all that was lift up, [officers] searched inside my pants ... up under my arms, my shoes and socks was tooken [sic] off and then the back was also searched." (*Id.*, pp. 35–36). When asked specifically whether the officers touched his genitals, Plaintiff testified: "Yes. Yes. Yes. Outside and at the precinct also, when I got down to the station house." (*Id.*, p. 36).

**\*12** Plaintiff also alleges that APD officers conducted a similar unlawful search when he was arrested on October 13, 2014, wherein Defendant Officers Gavigan and Kuhn performed a public search of Plaintiff's "private areas." (Dkt. No. 1, pp. 8–9, 22–23). And Plaintiff claims that APD Officers Gorleski, Kuhn and Meehan performed another unlawful visual body cavity search when Plaintiff arrived at the Albany police station. (*See id.*, pp. 8–9, 22). Plaintiff claims that, on both occasions, the APD officers lacked probable cause to "forcibly search" his underwear in public. (*Id.*, pp. 8–9). Consistent with these allegations, Plaintiff testified that the police strip-searched him in public and again at the police station. (Dkt. No. 165-28, pp. 57, 66). According

to Plaintiff, APD officers, including Defendant Gavigan, physically touched his genitals during both searches. (*Id.*, pp. 66–67).

The Albany Defendants admit that a visual body cavity search was conducted in a private room at the police station on October 13th, but they insist that no strip-searches were ever conducted in public. [6] (Dkt. No. 167-1, p. 9). Further, the Albany Defendants argue that Plaintiff's claims about public strip-searches are "simply unbelievable and unsupported by evidence," and that "the facts and totality of the circumstances rendered the strip [at the police station] necessary and constitutional." (*Id.*, pp. 9–10).

[6]    Regarding the October 13th encounter, Defendant Gavigan states that police performed a "pat down" search on Plaintiff's person. (Dkt. No. 167-2, ¶ 9).

The Fourth Amendment protects individuals from unreasonable searches by the government. *See* U.S. Const. amend. IV. A search of a person is presumptively unreasonable if conducted without a warrant, but warrantless searches may be justified if they fall under an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). For example, strip-searches at detention facilities are generally valid under the Fourth Amendment, as discussed above. Under the circumstances here, Plaintiff's allegations about searches at the police station also fall in this category. Notably, the record shows that Plaintiff was arrested with a large amount of narcotics in glassine envelopes and has a criminal history involving narcotics. (*See* Dkt. No. 167-2, p. 6). Therefore, the police also had reasonable suspicion that Plaintiff could be carrying and concealing drugs on his person, which justified the search. Further, Plaintiff admits that the search at the station was performed in a private room, limiting the intrusion on his privacy. (*See* Dkt. No. 165-28, p. 64).

Accordingly, Plaintiff's allegations about searches at the police station do not permit a rational finding that his Fourth Amendment rights were violated. *See Elk v. Townson*, 839 F. Supp. 1047, 1052 (S.D.N.Y. 1993) (holding that the defendant's presence in a vehicle in which drugs were found gave the sheriff's office "reasonable grounds" to conduct a strip-search at the precinct); *Easton v. City of New York*, No. 05-CV-1873, 2009 WL 1767725, at *3–4, 2009 U.S. Dist. LEXIS 53519 (E.D.N.Y. June 23, 2009) (holding that reasonable suspicion existed for visual body cavity search where the plaintiff was arrested while in possession of

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

marijuana and cash, allowing the rational inference that he was engaged in the sale and distribution of marijuana); *see also United States v. Doutre*, No. 08-CR-10215, 2009 WL 1211048, at *5, 2009 U.S. Dist. LEXIS 37758 (D. Mass. May 5, 2009) (holding that police had reasonable suspicion to conduct a strip-search of the defendant at the station where the defendant was arrested for a drug trafficking crime and police had received information from an informant that defendant possessed cocaine earlier that evening).

However, as to the alleged public strip-searches, the parties' contrasting accounts preclude summary judgment because there is an issue of fact as to whether Plaintiff was subjected to a public strip-search/visual body cavity inspection. A public search as alleged would rise to the level of a Fourth Amendment violation. In sum, the Albany Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claims is granted as to the strip and/or visual body cavity searches conducted upon intake at the Albany police station, but denied as to Plaintiff's claims that APD officers touched his genitals during public strip-searches on August 14th and October 13th of 2014. [7]

[7]    The Court rejects the Albany Defendants' argument that Officers Kisling, Wilson, Seeber, and James were not personally involved in any of the alleged conduct. (*See* Dkt. No. 167-1, p. 6). Plaintiff has consistently recalled that numerous officers were involved in the alleged unlawful searches on August 14th. Plaintiff specifically alleges that after his apprehension on August 14th, "Defendant Scott Gavigan and members of his unit arrived on the scene and performed [their] own search of [Plaintiff's] private areas." (Dkt. No. 1, p. 8). During Plaintiff's deposition, he recalled that he was escorted by four officers to a parking lot where the alleged search was conducted. (Dkt. No. 165-28, p. 35). In opposition to the Albany Defendants' motion, Plaintiff argues that "these officers [sic] names didn't fall from the sky there [sic] names are a result of there [sic] participation in the unlawful public cavities [sic] searches...." (Dkt. No. 177, p. 1). Viewing the alleged facts in a light most favorable to the Plaintiff, the Court finds that a reasonable jury could find that Officers Kisling, Wilson, Seeber, and James were involved in the alleged conduct.

**4. Deprivation of Property**

**\*13**    Next, Plaintiff alleges that Defendant Gavigan unlawfully "seized" $5,832.00 from him on an unspecified date. (Dkt. No. 1, p. 12). Plaintiff asserts that he has "yet to receive a voucher or notification of forfeiture proceedings," and that "[n]othing was ever mentioned in court and I hereby request [the] return of my money confiscated. Plaintiff asserts a claim of conversion [ ]." (*Id.*).

The Albany Defendants deny that that Detective Gavigan ever seized any money from Plaintiff, and argue that "even assuming this allegation is true, the availability of an Article 78 procedure is sufficient to satisfy Plaintiff's right to due process such that Plaintiff fails to state a cognizable [Section 1983] due process claim." (Dkt. No. 167-1, p. 14). In response, Plaintiff argues that the "court has jurisdiction over plaintiff [sic] property claim irrespective of plaintiff not filings [sic] and article 78 and waisting [sic] time." (Dkt. No. 177, p. 3).

In general, "there is no constitutional violation (and no available Section 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881–82 (2d Cir. 1996) (citations omitted). As noted by the Albany Defendants, the Second Circuit has held that "an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause...." *Id.* (citing *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988)). Moreover, this Court has held that Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government. *See Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 14–15 (N.D.N.Y. 1999) (citing N.Y. C.P.L.R. § 7801).

Here, Plaintiff has offered no evidence that he ever sought the return of the money that was allegedly seized by Detective Gavigan, either directly from APD or through an Article 78 proceeding. Plaintiff's remedy for this claim was to seek relief under Article 78 rather than file suit in federal court. Accordingly, Plaintiff's claim to recover the value of the seized property is dismissed as a matter of law.

Case 3:19-cv-00868-TJM-TWD   Document 22   Filed 02/01/21   Page 29 of 32

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

### 5. *Monell* Claim

Lastly, Plaintiff asserts a municipal liability claim against the City of Albany under several theories, including: (1) failure to train, supervise, or discipline its employees; (2) creation and use of "a blanket policy that allowed ... officers to commit perjury within arrest reports;" (3) "fail[ure] to implement a policy that screen [sic] all arrest reports/ accusatory instruments for facial and jurisdictional defects prior to infringing upon a plaintiff [sic] due process liberty rights;" (4) creation of "a blanket policy that allowed all officers to arrest a plaintiff in the absence of probable cause;" (5) "deliberate indifference to Plaintiff's false arrest by enforcing a blanket policy created by the prosecutor and the police chief to allow the Albany police to conduct stop-frisks, unlawful cavity searches, and file false reports without conducting a thorough investigation;" and (6) "the admission visual body cavity searches ... conducted pursuant to a long-established plan, policy, or procedure of the ... albany police department." (Dkt. No. 1, pp. 9–10, 15–17, 20–21).

In support of summary judgment, the Albany Defendants argue that "the only proof Plaintiff has offered in an attempt to substantiate these conclusory, boilerplate allegations are his own isolated allegations of misconduct which form the basis of this litigation." (Dkt. No. 167-1, p. 12). In response, Plaintiff argues that "[t]he defendants were put on notice for years about the same identical issues raised herein and failed to discipline or institute a policy to detect perjury, filings of perjured false police report, unlawful cavity searches etc. wherefore these issues are not isolated and clearly establishes a monell claim." (Dkt. No. 177, p. 3).

**\*14** Under *Monell*, a city may only be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694–95, 98 S.Ct. 2018; *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). A municipal policy or custom may be established by any of the following: (1) a formal policy, officially promulgated by the municipality, *id.* at 690, 98 S.Ct. 2018; (2) an action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. 1292; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127–30, 108 S.Ct. 915, 99 L.Ed.2d 107 (1985) (plurality opinion); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, Plaintiff has not demonstrated any underlying constitutional violation to support his *Monell* claim, with the possible exception of the alleged public searches. Moreover, he has not produced any evidence of a municipal policy or custom by the City of Albany that caused the alleged constitutional violations. Plaintiff simply asserts, without offering supporting evidence, that his experiences with APD officers were part of a larger pattern of systemic misconduct. (*See* Dkt. No. 1, pp. 9–10, 15–17, 20–21). At most, Plaintiff has only alleged a few isolated instances of misconduct. [8] Without more, he cannot sustain a *Monell* claim because it is well-settled that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *see also Southerland v. Garcia*, 483 F. App'x 606, 609 (2d Cir. 2012) (holding that summary judgment was proper where the "[p]laintiffs [ ] failed to allege, let alone present any evidence of, an official custom or policy such as is necessary to establishing liability under *Monell*"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (affirming the district court's dismissal of a *Monell* claim where isolated evidence of constitutional violations "[fell] far short of establishing a practice that is so 'persistent and widespread' to justify the imposition of municipal liability"). Accordingly, Plaintiff's conclusory allegations of wider misconduct by the Albany police are insufficient to show a policy or practice by the City, and Plaintiff's *Monell* claim must be dismissed. [9]

8
> The Court notes that Plaintiff's opposition papers include several articles from Albany-area newspapers identifying at least one other case in which APD and Defendant Gavigan were accused of civil rights violations. (*See, e.g.*, Dkt. No. 177-1, pp. 15–16, 41–42). Although there appears to be some tangential similarities between the claims in those cases and Plaintiff's claims here, there is nothing to suggest anything more than isolated incidents of alleged wrongdoing on behalf of specific officers.

9
> Plaintiff claims that Albany Police Chief Steven Krokoff violated his constitutional rights because

Chaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 3857995

Chief Krokoff, *inter alia*, failed "to prevent unlawful stops, frisks without probable cause or [to prevent] the filing of perjurous [sic] police reports that lead to unwarranted malicious prosecution or deprivation of plaintiff [sic] due process liberty rights." (*See* Dkt. No. 1, pp. 9–11). However, Plaintiff has failed to offer any evidence supporting these allegations, and therefore, Plaintiff's claims against Chief Krokoff must be dismissed.

## V. CROSS-CLAIMS

**\*15** The Schenectady County Defendants and Defendant Bell also move to dismiss all cross-claims against them. (*See* Dkt. No. 165-43, pp. 32–33; Dkt. No. 168-32, p. 9). Although "[n]either the Supreme Court nor the Second Circuit has ruled on the question of whether there is a right to contribution between joint tortfeasors under 42 U.S.C. § 1983, New York district courts have consistently held that federal law does not provide a basis for contribution under Section 1983." *See Thomas v. City of Troy*, 293 F. Supp. 3d 282, 301–02 (N.D.N.Y. 2018) ("even if this action went to trial and City Defendants were found liable, they would be liable for their own actions and not for the actions of County Defendants"); *see also De Ratafia v. County of Columbia*, No. 13-CV-0174, 2013 WL 5423871, at *18, 2013 U.S. Dist. LEXIS 138169 (N.D.N.Y. Sept. 26, 2013) (holding that "federal law does not provide a basis for contribution for liability under Section 1983"); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010) ("To the extent the County seeks indemnification and contribution on plaintiff's § 1983 claims, they cannot do so as a matter of law. No right to contribution exists under § 1983. Nor is there a federal right of indemnification under the statute."). The Court sees no reason to diverge from this well-established precedent here. Accordingly, Defendants' cross-claims for contribution and indemnity are dismissed.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Schenectady County Defendants' Motion for Summary Judgment (Dkt. No. 165), is **GRANTED** as to Plaintiff's claims for: (1) unlawful visual body cavity searches; (2) denial of necessary medical attention; and (3) municipal liability under *Monell;* but is **DENIED** as to Plaintiff's excessive force claim arising from the encounter on December 28, 2014; and it is further

**ORDERED** that Defendant Bell's Motion for Summary Judgment (Dkt. No. 168), is **GRANTED**; and it is further

**ORDERED** that the Albany Defendants' Motion for Summary Judgment (Dkt. No. 167), is **GRANTED** as to Plaintiff's claims for: (1) unlawful searches at the police station on October 13, 2014; (2) excessive force on August 13, 2014 and October 13, 2014; (3) unlawfully "seized" money; and (4) municipal liability under *Monell*; but is **DENIED** as to Plaintiff's claims for unlawful public strip-searches on August 13, 2014 and October 14, 2014; and it is further

**ORDERED** that all cross-claims, to the extent they are asserted by and against the Defendants, are **DISMISSED** with prejudice; and it is further

**ORDERED** that, in accordance with this Memorandum-Decision and Order, Defendants Sinatra, Van Hoesen, Reaulo, Bell, Schenectady County Jail, Unknown John Does from the Schenectady County Jail, Unknown John Does from the Schenectady County Sherriff, and Albany Police Chief Steven Krokoff are hereby **DISMISSED** from this action with prejudice; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3857995

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1929552

2017 WL 1929552
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Andre THOMPSON, Plaintiff,
v.
CITY OF NEW YORK, and
John Does 1-3, Defendants.

16 Civ. 824 (PKC)
|
Signed 05/09/2017

**Attorneys and Law Firms**

Andre Thompson, New York, NY, pro se.

Kate Fay McMahon, New York City Law Department, New York, NY, for Defendants.

<u>MEMORANDUM AND ORDER</u>

P. Kevin Castel, United States District Judge

**\*1** Plaintiff Andre Thompson, who is unrepresented, asserts pursuant to 42 U.S.C. § 1983 that his constitutional rights were violated when the defendants strip searched him upon entering and leaving New York City Department of Correction ("DOC") facilities and during searches of his housing area. Plaintiff alleges that because he was a pretrial detainee facing only misdemeanor charges, these actions violated his Fourth Amendment rights as applicable to the defendants by reason of the Fourteenth Amendment.

This action was filed on February 2, 2016. (Dkt. 2.) In an Order dated March 18, 2016, then Chief Judge Loretta Preska wrote that "[p]laintiff's allegations that he is a pretrial detainee facing misdemeanor charges and is strip searched when going to and from court, without more, are insufficient to state a claim." (Dkt. 5) (citing Florence v. Board of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318 (2012)). However, Chief Judge Preska granted plaintiff leave to amend his complaint because there were still some situations in which it may not be reasonable to strip search pretrial detainees. (See id.) (citing Florence, 566 U.S. at 339 (declining to reach the issue of searches involving intentional humiliation or abuse), In re Nassau Cty. Strip Search Cases, 639 Fed.Appx. 746, 750-51 (2d

Cir. 2016) ("categorically strip-searching the following two classes of detainees may not pass constitutional muster: (1) detainees charged with misdemeanors and segregated alone from the general population; and (2) detainees charged with misdemeanors and segregated with other detainees charged with misdemeanors from the general population."), and Turkmen v. Hasty, 789 F.3d 218, 260 (2d Cir. 2015) (policy requiring strip searches "was not reasonably related to legitimate penological interests" when there was "no possibility that [inmates] could have obtained contraband")).

Plaintiff filed an Amended Complaint on April 7, 2016. (Dkt. 6.) In an Order dated July 13, 2016, this Court set a briefing schedule for the defendant's proposed motion to dismiss, requiring any opposition from the plaintiff by October 10, 2016. (Dkt. 14.) On September 8, 2016, defendant City of New York moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Dkt. 15.) It is now more than seven months since the defendant filed its motion to dismiss, and more than six months since the deadline for the plaintiff's response has passed. (Dkt. 14.) The plaintiff has not submitted opposition papers, and has not written the Court to request an extension. As a result, the motion is unopposed.

When considering a Rule 12(b)(6) motion, the Court draws all reasonable inferences in the plaintiff's favor and accepts as true the facts alleged in the complaint. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). To survive a motion to dismiss, a complaint must "contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Nevertheless, " 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Courts continue to afford special solicitude for pro se complaints after Iqbal and Twombly. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). A plaintiff's failure to respond to a motion to dismiss does not automatically warrant dismissal of the complaint. McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000).

**\*2** In his Amended Complaint, plaintiff alleges that while he was held in three different DOC facilities—the Manhattan Detention Center ("MDC"), the George Motchan

Thompson v. City of New York, Not Reported in Fed. Supp. (2017)

2017 WL 1929552

Detention Center ("GMDC"), and the Anna M. Kross Center ("AMKC")—he was strip searched multiple times in housing areas and in the intake areas when he was on his way to and from court. (Amended Complaint, Dkt. 6.) Plaintiff claims these searches occurred between September 9, 2015 and March 29, 2016. (Id.) According to plaintiff, the DOC officers had no "cause" to strip search him before he was taken to court because he was already required to clear multiple metal detectors and his clothing and property were scanned and hand searched by correction officers. (Id.) Similarly, he claims that there was no "cause" for officers to take him and 5-7 other inmates to the bathroom to be strip searched during housing area searches because correction officers already use drug sniffing dogs, metal detectors, and x-ray machines to search the person and property of the inmates during these searches. (Id.) Accordingly, plaintiff concludes that the only purpose of these strip searches was to "demoralize, dehumanize, and violate [his Fourth] Amendment rights." (Id.)

Plaintiff alleges that he filed grievances at AMKC and GMDC regarding these strip searches. (Id.) According to the Amended Complaint, there was "no result" in his AMKC grievance and in response to his GMDC grievance he was "deemed a security risk." (Id.) Plaintiff does not appear to have appealed the DOC decision, if any, on either of his grievances. (Id.) (showing no response to the question "What steps, if any, did you take to appeal that decision?"). However, in his original complaint, he wrote that he was "never part of the appeals process because [he] was never spoken to anyone about [his] grievance." (Dkt. 2.)

The Amended Complaint fails to cure the deficiencies identified by Chief Judge Preska and is dismissed for substantially the same reasons noted in Chief Judge Preska's Order of March 18, 2016. The general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional, even if the detainee is accused only of a misdemeanor. See Florence, 566 U.S. at 324, 339 (holding that suspicionless strip search of detainee arrested for a minor offense prior to his admission into the general jail population did not violate Fourth Amendment); Smith v. City of N.Y., No.

14 Civ. 5934 (JCF), 2015 WL 3929621, at *2-3 (S.D.N.Y. June 17, 2015) ("[T]he policy of strip searching inmates after contact visits or upon departing for court appearances does not, in itself, violate the Constitution."); Myers v. City of N.Y., No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (suspicionless strip searches of non-felony pretrial detainee at intake and upon leaving facility for court appearances were constitutional); Israel v. City of N.Y., No. 11 Civ. 7726 (JMF), 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (strip searches before and after court visits and incident to random cell searches were reasonably related to legitimate security interests and did not violate Fourth Amendment). The types of searches described by the plaintiff serve the legitimate penological purpose of preventing contraband from coming into and out of prisons and jails. See Smith, 2015 WL 3929621, at *2; Israel, 2012 WL 4762082, at *3 (strip search during search of inmate's cell reasonable because it ensures inmate is not concealing contraband on his person).

Plaintiff's argument that there was no "cause" to strip search him is unavailing because Florence permits correction officers to strip search detainees without particularized suspicion, see Florence, 566 U.S. at 339; Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), aff'd, 461 Fed.Appx. 18 (2d Cir. 2012) ("Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal."), and recognizes that strip searches are specifically "designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches." Florence, 566 U.S. at 334.

**\*3** For the foregoing reasons, the defendant's motion to dismiss (Dkt. 15) is GRANTED.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1929552

---

                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.